UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| Plaintiff, | § § | |
| vs. | § § | Criminal 4:15-cr-00591 |
| Marie Neba | § § § | |
| Defendant. | § § § | |

## MOTION FOR RELEASE PENDING SENTENCING

### INTRODUCTION

Defendant Marie Neba ("Defendant") moves this Court to release her from custody pending sentencing.

The Grand Jury returned an Indictment against Defendant on November 15, 2015, charging her and others with conspiracy to commit healthcare fraud and healthcare fraud in violation of 18 USC §§ 1349, 1347, and 2. After trial, on November 10, 2016, the jury returned a guilty verdict against Defendant on all counts. Defendant was immediately taken into custody.

Before this Indictment, Defendant had no criminal history. Moreover, before trial, Defendant was on pretrial release. Defendant lived with her husband, her seventeen-year old daughter, and her twin five-year old sons. Defendant requests the Court to allow her to return to her family so that she can adequately prepare them for her future incarceration before she is sentenced.

1

## DISCUSSION

Section 3143(a) of the Bail Reform Act provides for release of a defendant pending sentencing. Specifically it states that, if a "judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c)," then, "such judicial officer shall order the release of the person in accordance with section 3142(b) or (c)." 18 U.S.C. 3143(a). Section 3143(a)(2) restricts release of a defendant for certain offenses; none of these release restrictions apply here. Thus, the only question the Court has to answer before releasing Defendant is whether it is clear that Defendant will not flee and does not pose a danger to the community.

Defendant is tied to her family, the community, and poses no danger to anyone. She is a first time offender. In comparison, the defendant in United States v. Majors, was a first time drug offender but had previous unrelated convictions. United States v. Majors, 932 F.Supp. 853, 857 (E.D. Tex. 1996). The court in Majors released the defendant pending sentencing. Id. at 858. The Majors court found that the Bail Reform Act did contemplate "post-conviction release if a defendant makes a sufficient showing to the court concerning the likelihood of flight and danger to any person or to the community." Id. at 855. The Majors court stated that some factors a district court can consider in determining whether to release a defendant pending sentence include the factors identified in 18 U.S.C. 3142(g). That section outlines the following factors:

    (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
(2) the weight of the evidence against the person;
(3) the history and characteristics of the person, including—
    (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
    (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required. 18 U.S.C. 3142(g)

The first factor asks the Court to consider the nature and circumstances of the offense. The present offenses of conviction are healthcare fraud and conspiracy to commit healthcare fraud. Such offenses require planning and for a defendant to be in a certain business. Defendant, during her release pending sentencing, intends to engage in the healthcare industry only as a patient or as a parent to patients. There is no risk of recidivism during her presentencing release. The second factor goes against Defendant as she was convicted of the charges against her. However, this will always be the case when considering release pending sentencing. The third factor, the history and character of Defendant, is the most important

3

consideration for the Court. Defendant has never been convicted of a crime before. She is the mother of three children, two of whom under six years of age. Before her unexpected incarceration immediately following her conviction, she was the primary care provider for her children, especially her young sons. She was also active in the community, regularly attending her local church. Finally, the fourth factor undoubtedly favors releasing Defendant pending sentencing. Like the defendant in Majors, Defendant was on release pending trial, showing the Court had previously determined that Defendant is not a danger for the community. United States v. Majors, 932 F.Supp. at 856-857. Thus, the factors outlined in §3142(g) weigh heavily in favor of releasing Defendant before sentencing.

     Present counsel was informed that the Court placed Defendant into custody on the basis of the Government's accusation that Defendant was contacting witnesses and encouraging them to lie. We assume that Defendant contacted witnesses and encouraged them to testify in a way that supported her innocence. The Government likely assumed that, because the jury convicted Defendant on all counts, this equated to Defendant encouraging witnesses to lie. The Court can address this concern easily with an order that prohibits Defendant from any contact with witnesses. Moreover, there was no accusation that Defendant threatened witnesses or is a danger to them.

     Further, the well-being of Defendant's children, especially of her two young sons, weigh in favor of releasing Defendant pending her sentencing. Many

studies have been conducted regarding the separation of children and primary caretakers, like Defendant. For example, one study concluded that:

> In reviewing the impact of a parent's incarceration on children, Shaw (1990) claimed, '*many of these children, it is clear, may suffer more pain than does their criminal parent in prison or even the original crime victim*'. We know that children are significantly affected by the incarceration of a parent. Research looking at the impact of a fathers imprisonment on children has found a range of social, behavioural and psychological difficulties in children…. Emma Stanley and Stuart Byrne, "Mothers in Prison: Coping with Separation from Children," <u>Women in Corrections: Staff and Clients Conference</u> (October 31-November 1, 2000), page 2 (emphasis in original); available at http://www.aic.gov.au/media_library/ conferences/womencorrections/stanbyrn.pdf (attached as Exhibit A).

Moreover, "for children whose mothers are incarcerated, there is an increased likelihood of instability…" The Osborn Association, "Children of Incarcerated Parents Fact Sheet" at page 1; available at http://www.osborneny.org/images/uploads/printMedia/Initiative%20CIP%20Stats _Fact%20Sheet.pdf (attached as Exhibit B). Other studies have found that prolonged separations from primary caretakers, like Defendant is to her children, are connected to poor academic achievement in the future. "For example, Leventhal and Brooks-Gunn (2000) found that any separation from a primary caregiver (defined as hospitalizations lasting one week or more, or a change of primary caregiver between assessment waves) was negatively associated with children's reading achievement by age 8." Kimberly Howard, "Early Mother-Child Separation, Parenting, and Child Well-Being in Early Head Start Families," NIH Public Access (Author Manuscript) [online] 2011 at page 3; available at:

https://www.ncbi.nlm.nih.gov/pubmed/21240692 (attached as Exhibit C). That same paper also added the following: "In particular, parental separation was related to earlier initiation of sexual intercourse and to educational externalizing problems[1]. In addition, although mother-child and father-child separation were both related to negative outcomes, *the predictions from mother-child separation were particularly robust across multiple domains.*" Id.; Ex. C (emphasis added). The effect of the sudden separation from their mother at such a young age is immense. Allowing Defendant to be released before she is sentenced will allow her to prepare her children before she is incarcerated for her conviction.

Finally, Defendant also asks to be released pending sentencing because of her health. Before she was taken into custody, she was under the care of a cardiologist and a primary care physician. Attached as Exhibit E please find medical notes/letters from her doctors. Further, while she has been in custody she has developed a serious rash without a known cause that is not responsive to steroids, she has suffered from an infection in her urinary tract, and has not been able to receive the medication prescribed to her by her physicians from before. In addition, on December 21, 2016, Defendant was taken to the emergency room at Conroe Medical Center due to complications with her thyroid. She has eye pain because of her thyroid levels. The emergency room doctor wanted Defendant to

---

[1] Externalizing behaviors include: Fighting, Cursing, Stealing, Destruction of property, Arson, Running away from home, Underage drinking, Impulsive behaviors, and Refusal to follow rules, including written laws and curfews. Yolanda Williams, Lecture in Psychology 102, available at http://study.com/academy/lesson/externalizing-behaviors-examples-definition.html#transcriptHeader (attached as Ex. D).

6

follow up with her regular physician, which she cannot do as she remains in custody.

In conclusion, Defendant respectfully requests this Court release her pending sentencing. She is not a flight risk. She does not pose a danger to anyone. Her release will mitigate the devastating effects of incarceration on her children and allow her to address her health complications.

Respectfully submitted,

KHOURI LAW FIRM

*/s/ Michael J. Khouri*
Michael J. Khouri
Texas Bar No. 24073809

7616 LBJ Freeway, Suite 500
Dallas, Texas 75251
Telephone: (214) 257-0999
Fax: (972) 733-1335
Email: mkhouri@khourilaw.com

Attorney for Defendant, MARIE NEBA

**CERTIFICATE OF CONFERENCE**

I, Michael J. Khouri, counsel for Defendant Marie Neba, through my office, understand that the Government opposes this motion for release pending sentencing.

*/s/ Michael J. Khouri*
Michael J. Khouri

**CERTIFICATE OF SERVICE**

I hereby certify that on December 23, 2016, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

*/s/ Michael J. Khouri*
Michael J. Khouri