United States District Court
Southern District Of Texas

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Marie Neba,<br><br>Defendant. | Case No. 4:15-cr-00591-2 |

**Marie Neba's Motion for Reduction in Sentence Pursuant To
18 U.S.C. § 3582(c)(1)(A) as Amended by the First Step Act of 2018**

Defendant Marie Neba ("Neba"), through her attorneys, respectfully moves this Court pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b)(1) of the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), for an order reducing her sentence based on her terminal illness diagnosis of stage IV metastatic breast cancer and the incapacitation of the caregiver for Neba's twin 7-year old boys. Pursuant to the First Step Act, the Court has jurisdiction to determine whether "extraordinary and compelling reasons" warrant a sentence reduction after consideration of sentencing factors under 18 U.S.C. § 3553(a) and the Sentencing Commission's policy statement on reduction of sentence in U.S.S.G. § 1B1.13. Because Ms. Neba's circumstances fall within the Sentencing Commission's standards for reduction of sentence, we respectfully request the Court grant the requested sentence reduction to time served, or to probation with or without a condition of home confinement, pursuant to 18 U.S.C. § 3582(c)(1)(A). The Court may

order "compassionate release" for "efficient" medical treatment even if the BOP could offer good care.

However, in Ms. Neba's case the BOP cannot offer efficient and necessary treatment as evidenced by the delays experienced by Ms. Neba and the availability of more effective treatments outside of the BOP. Given the quickly advancing nature of her disease, time is of the essence.

### I. Background

On December 21, 2018, the President signed the First Step Act into law. Among the criminal justice reforms, Congress amended 18 U.S.C. § 3582(c)(1)(A) to provide the sentencing judge jurisdiction to consider a defense motion for reduction of sentence when "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" First Step Act of 2018 at 119. Neba requested BOP to move, under 18 U.S.C. § 3582(c)(1)(A), for a reduction of her sentence to time served on three occasions on the bases of a terminal medical condition, debilitated medical condition, and non-medical circumstances—incapacitation of a family member caregiver. (Exhibit A). The warden of FMC Carswell denied those requests on April 27, 2018; December 27, 2018; and January 22, 2019. (Exhibit A). Neba has subsequently exhausted her administrative remedies. Pursuant to the First Step Act, Ms. Neba now moves this court directly for a compassionate release sentence reduction.

## II.     Sentence Reduction Authority Under 18 U.S.C. § 3582(c)(1)(A).

As part of the First Step Act, Congress removed a major obstacle from judicial review of sentences to determine whether conditions such as terminal illness made a sentence reduction "sufficient, but not greater than necessary," under 18 U.S.C. § 3553(a). Under the Act, this Court is afforded jurisdiction to make the § 3553(a) determination of whether Neba's approximately 31 months of incarceration (including time prior to sentencing),[1] in light of her terminal illness and the incapacitation of the caregiver for her seven-year-old twin boys, is "sufficient, but not greater than necessary," to accomplish the goals of sentencing.

This Court has discretion to reduce the term of imprisonment imposed in this case based on § 3582(c)(1)(A)(i), which states in relevant part that the Court "may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction[.]" Title 28 U.S.C. § 994 authorizes the U.S. Sentencing Commission to define "extraordinary and compelling reasons."[2]

Application Note 1 to § 1B1.13 to the Sentencing Guidelines defines "extraordinary and compelling reasons" as follows:

> 1. **Extraordinary and Compelling Reasons**. —Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

---

[1] Neba has been in custody since November 10, 2016, after her trial pending sentencing.

[2] *See* 28 U.S.C. § 994(t) "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of [T]itle 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."

(A) **Medical Condition of the Defendant**. —
  (i) The defendant is **suffering from a terminal illness** (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. **Examples include metastatic solid-tumor cancer**, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

  (ii) The defendant is—
    (I) suffering from a serious physical or medical condition,
    (II) suffering from a serious functional or cognitive impairment, or
    (III) experiencing deteriorating physical or mental health because of the aging process,

  that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

. . .

(C) **Family Circumstances**. —
  (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

. . .

(D) **Other Reasons**. —As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13, comment. n.1(A)(i) (emphasis added). As expressly stated in U.S.S.G. § 1B1.13, "[a] specific prognosis of life expectancy . . . is not required." While the Sentencing Commission Policy Statement on reductions of sentence lists three categories of "extraordinary and compelling reasons" there is no restrictive list of combination of factors that can warrant release. U.S.S.G. § 1B1.13, comment. n.1.

### III. Procedural History.

Neba was found guilty of offenses related to Medicare fraud and sentenced to 900 months' imprisonment and three years of supervised release. (Doc. 208). She has been incarcerated since November 10, 2016. She is currently at a federal medical center, Carswell FMC.[3] According to the BOP Inmate Locator, she has a projected release date of March 13, 2082.[4] She is 54 years old.

### IV. Neba's History of Stage IV Metastatic Breast Cancer.

Ms. Neba was immediately placed into custody on November 10, 2016 after her jury trial pending sentencing. On or around December 2016, Ms. Neba began experiencing breast pain, however, it was not until after months of delays that she received a mammogram in April 2017. (Exhibit B, p. 17). A breast biopsy was not completed until May 15, 2017, and an MRI was not completed until May 30, 2017. (Exhibit B, p. 17). Neba was diagnosed with Stage IV breast cancer with bone metastases on May 15, 2017—five months after complaining of breast pain. (Exhibit B, p. 19). A P.E.T. scan in October 2017 confirmed "widespread osseous metastatic disease," specifically in her spine. (Exhibit B, p. 23). She received seven weekly chemotherapy treatments (taxol) in August and September 2017. (Exhibit B, p. 19). She has continued to receive chemotherapy on various schedules since that time including Xgeva, Ibrance, and letrozole. (Exhibit B, p. 9).

---

[3] Information obtained via the Inmate Locator feature of the BOP website www.bop.gov (last visited June 19, 2019).

[4] The projected release date does not take into account the increase in "good time" mandated by the First Step Act.

Ms. Neba has experienced a number of side effects from chemotherapy including nausea, leg pain and neuropathy in her feet ("a persistent burning sensation"). (Exhibit B, pp. 9, 12, 29). She also suffers from other chronic conditions including hypothyroidism, type II diabetes, hypertension, unspecified glaucoma, constipation, polyneuropathy, myopia, presbyopia, and stage III chronic kidney disease. (Exhibit B, pp. 28–29, 32; Doc. 140-5).

## V. Neba Presents "Extraordinary and Compelling Reasons" Warranting a Reduction in Sentence Under 18 U.S.C. § 3582(c)(1)(A).

### A. Neba's Terminal Illness Presents "Extraordinary and Compelling Reasons."

Neba easily meets the threshold requirement of "extraordinary and compelling reasons" warranting a reduction in her sentence to time served, or in the alternative, probation with or without home confinement because she has a terminal illness within the meaning of the Application Note 1(A)(i) of U.S.S.G. § 1B1.13 ("The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)."). Neba has a confirmed diagnosis of metastatic breast cancer that has spread to her bones. (Exhibit B, p. 9). MD Anderson, one of *the premier* cancer treatment centers in the world, describes Ms. Neba's form of cancer:

> When breast cancer spreads beyond the breast and nearby lymph nodes to other parts of the body, such as the bones, brain, liver or lungs, it is called advanced breast cancer. Other names include metastatic or stage IV breast cancer. Even though the disease may be found in other organs, it is still considered and treated as breast cancer.
>
> Most cases of advanced breast cancer are not considered curable. Instead, it is treated like a chronic illness. The goal of care is to prolong life and maintain the patient's quality of life.

MD Anderson Cancer Center, *Advanced Breast Cancer Clinic*, https://www.mdanderson.org/patients-family/diagnosis-treatment/care-centers-clinics/breast-center/advanced-breast-cancer-clinic.html (last visited May 28, 2019). Because Ms. Neba's breast cancer is incurable, her only hope for prolonging her life expectancy is getting prompt, regular treatments from the best experts in the country. This terminal illness will ultimately take her life, so treatment is critical to prolonging her survival.

Indeed, Ms. Neba's diagnosis of metastatic breast cancer falls squarely in the definition of "extraordinary and compelling reasons" as expressly provided in the U.S.S.B. § 1B1.13 Policy Statement. It reads, in part:

> 1. **Extraordinary and Compelling Reasons**. —Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
>> (A) **Medical Condition of the Defendant**. —
>> (i) The defendant is <u>**suffering from a terminal illness**</u> (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. **Examples include metastatic solid-tumor cancer**, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

The Sentencing Commission specifically provided examples of what would constitute a terminal illness and included metastatic solid-tumor cancer, which describes Neba's cancer. One Tennessee federal court recently granted the compassionate release request of an inmate with Stage IIIB metastatic colorectal cancer and held that "[b]ecause the Sentencing Guidelines include metastatic

cancers—and do not require a specific prognosis of life expectancy—as an example of extraordinary and compelling circumstances, the Court finds that defendant's disease meets this criterion." *U.S. v. Pesterfield*, Doc. 756, Case No. 3:14-CR-14-TAV-HBG-1 (E.D. Tenn., May 6, 2019). Neba's diagnosis of metastatic breast cancer to the bones and her need for prompt treatment, coupled with the availability of clinical trials, advanced technology, and specialists offered outside the BOP system present "extraordinary and compelling reasons" for reduction of her sentence under 18 U.S.C. § 3582(c)(1)(A). As demonstrated below, such a reduction is consistent with, and indeed supported by, the 18 U.S.C. § 3553(a) factors whose consideration is mandated by § 3582(c)(1)(A) "to the extent they are applicable."

### B. Neba's Family Circumstances As "Extraordinary and Compelling Reasons."

Prior to her incarceration, Ms. Neba was the primary caregiver of her seven-year-old twin boys and the recent incapacitation of the boys' caregiver now presents an extraordinary and compelling reason for a sentence reduction. (See Exhibit C, pp. 1–3). Neba's husband was also indicted in the offenses for which Neba was convicted but failed to appear for his sentencing and has been a fugitive since that time. (Doc. 259, p. 2). After Neba was taken into custody, her sons were eventually cared for by Ms. Tiza, a grandmother, who extended her stay in the United States hoping that Neba would be released from custody. (Exhibit C, pp. 13–14). Ms. Tiza must return to Africa and Grace Ndikum was going to become the primary caregiver for the boys, but as the attached documentation indicates she suffers from multiple chronic illnesses leaving her unable to care for twin seven-year-old boys. (Exhibit C, pp. 12–

15). There is no one else to care for the minor children and their well-being has suffered significantly as a result of their mother's incarceration. (See Exhibit C, pp. 4–12).

U.S.S.B. § 1B1.13 Policy Statement provides that family circumstances, including the "incapacitation of the caregiver of the defendant's minor child or minor children" may constitute an "extraordinary and compelling" reason to grant a sentence reduction. U.S.S.G. § 1B1.13, Application Note 1(C). Based on the incapacitation of the twin boys' caregiver Grace Ndikum, Neba's sentence should be reduced or modified to allow Ms. Neba to care for her sons in the community rather than from prison.

    **C.**    **With Full Consideration of the § 3553(a) Factors, Neba's Time Served Constitutes A Sentence Sufficient but Not Greater Than Necessary to Accomplish the Goals of Sentencing.**

Under § 3553(a), the extraordinary and compelling reasons warrant sentence reduction based on the characteristics of Neba, the need for an effective and supportive environment for medical care and a caregiver for her sons, and the accomplishment of the deterrence and public safety purposes of sentencing. The time already served has met many of the original sentencing goals.

Since Neba's sentencing, two of the § 3553(a) factors have changed and carry much more weight than at the time of sentencing: (1) "the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), and (2) "the need for the sentence imposed . . . to provide the defendant with . . . medical care . . . in the most effective manner," 18 U.S.C. § 3553(a)(2)(D). Neba's "history and characteristics" have changed since her

cancer is fast-growing and the delayed in originally diagnosing and beginning treatment has allowed her cancer to rapidly progress and metastasize to her bones. While in custody, Ms. Neba had to wait over four months for someone to address her complaints of breast pain—upon information and belief, a mammogram was completed in April 2017, but her complaints of breast pain began in December 2016. (Exhibit B, p. 17). Moreover, it took approximately five months from the time Ms. Neba began experiencing the painful symptoms to be properly diagnosed with metastatic breast cancer. (Exhibit B, p. 17).

If Ms. Neba had any control over her medical care, she would not have been forced to wait five months to get the medical attention she deserves and delay treatment of a terminal illness in which patients have a median survival rate of three years. Fred Hutch, *Living With Stage 4*, https://www.fredhutch.org/en/news/center-news/2014/10/stage-4-metastatic-misunderstood-breast-cancer.html (last visited May 28, 2019). A five-month delay, or any delay in this case is unacceptable and there is no way to determine how that ultimately impacted Ms. Neba's prognosis. Neba's health has and will continue to deteriorate and she will require more assistance physically and medically over time. The Court must now consider the need "to provide [Neba] with . . . medical care . . . in the most effective manner." 18 U.S.C. § 3553(a)(2)(D).

The BOP is likely to claim it is capable of providing adequate medical care and treatment for Neba's cancer but given the delays in treatment she has already experienced including the delay in diagnosing her cancer, that claim seems unlikely.

Commentators have found significant issues with the BOP's provision of medical care and the medical staffing shortages, treatment delays, and medical personnel recruiting issues plaguing the BOP,[5] as well as the fact that treatment in the community would be more efficient, timely, and less burdensome on the BOP's medical costs weigh heavily in favor of reducing Neba's sentence.[6]

As an inmate, Neba cannot select her doctor or treatment center. If granted compassionate release, Neba would have the option to explore treatment through one of the many superior cancer treatment centers in this country. For example, right in Texas MD Anderson offers a level of technology, advancement, and expertise that cannot be matched by anyone, including the BOP. For Neba, care outside the BOP would also open her to treatment options and clinical trials unavailable to her at this time. Compassionate release and treatment outside of a correctional environment is not only the most effective manner of treatment, it would also be the most efficient and least expensive. However, that is not the sole reason for reexamining § 3553(a)(2)(D).

Even if the BOP is able to provide competent care, Neba's condition is "extraordinary" under § 3553(a)(2)(D) and Neba is entitled to "the most effective manner" of treatment. In the Eighth Circuit case of *United States v. Wadena*, 470

---

[5] Erica Zunkel, *18 U.S.C. § 3553(a)'s Undervalued Sentencing Command: Providing a Federal Criminal Defendant with Rehabilitation, Training, and Treatment in "the Most Effective Manner,"* 9 Notre Dame Journal of Int'l Law 49, 61 (2019).

[6] Enabling Neba to seek treatment at her own expense would save the BOP considerable money. Prisoners over 50 years old "cost three times as much to incarcerate [as younger prisoners], due to increased health care costs." Casey N. Ferri, *A Stuck Safety Valve: The Inadequacy of Compassionate Release for Elderly Inmates*, 43 Stetson L. Rev. 197, 197 (2013).

F.3d 735 (8th Cir. 2006), the court recognized that while the defendant inmate could obtain dialysis treatments and medical care in prison, "[18 U.S.C.] § 3553(a)(2)(D) explicitly states that the effective provision of necessary medical care is an appropriate factor for the district court's consideration in sentencing." *Id*. at 739. Moreover, "[t]he district court had the discretion to decide that it would be more efficient and effective for [the prisoner] to receive treatment from his current healthcare provider." *Id*.

As an inmate, Neba is not "entitled" to the doctor of her choosing and she cannot schedule timely appointments, pain medicine, or much-needed treatments to slow the progression of her terminal illness. In this case, the most efficient and effective treatment for Neba is at home where she can be supported by friends and surrounded by loved ones to enhance her treatment and recovery.

Neba's circumstances have also changed since the time of her sentencing: her husband is no longer present to serve as the primary caregiver for her children since he has been a fugitive since he failed to show for his sentencing. (See discussion *supra*, Section V.B.) In addition, the grandmother must return to Africa and the remaining caregiver is incapacitated and unable to care for seven-year-old boys.

<u>In fact, the grandmother of Neba's children is set to return to Africa during the week of June 24, 2019 and is unable to prolong her stay in the United States any longer at this time.</u>

The remaining § 3553(a) factors also support a reduction of Neba's sentence or are neutral. In terms of her "history and characteristics" Neba is 54 years old and she

has metastatic breast cancer, hypothyroidism, hypertension, type II diabetes, and chronic kidney disease. (*See supra*, Section IV). Reducing Neba's sentence to time served, or to a term of probation, would not disserve the factors set out in 18 U.S.C. § 3553(a)(2)(A) (the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" of conviction), 18 U.S.C. § 3553(a)(2)(B) (the need for the sentence imposed "to afford adequate deterrence to criminal conduct"), and 18 U.S.C. § 3553(a)(2)(C) (the need for the sentence imposed "to protect the public from further crimes of the defendant").

The requested reduction in sentence will not minimize the seriousness of Neba's offenses and will provide just punishment and adequate general deterrence.

### D. Neba Is Not A Danger to the Safety of Any Other Person Or to the Community.

Ms. Neba is a first time, non-violent offender. In addition to her lack of prior criminal history, Neba is suffering from a terminal illness. She no longer possesses a license to practice nursing or a Medicare number, and her only interaction with the medical community would be as a patient herself, or the parent of a patient. She poses no danger to the safety of others or the community.

### E. Sentence Reduction is Consistent With § 1B1.13 Policy Statement.

A reduction in Neba's sentence is consistent with the U.S.S.G. § 1B1.13 Policy Statement because Ms. Neba has been diagnosed with a terminal illness, which is expressly recognized as an extraordinary and compelling reason to warrant reduction. Application Note 1(A)(i) specifically lists metastatic solid-tumor cancer as

an example of an illness that falls within the definition of terminal illness and therefore presents an extraordinary and compelling circumstance.

Therefore, Neba's sentence reduction based on her terminal illness diagnosis of metastatic breast cancer would be consistent with the § 1B1.13 Policy Statement. *See, U.S. v. Pesterfield*, Doc. 756, Case No. 3:14-CR-14-TAV-HBG-1 (E.D. Tenn., May 6, 2019) (reducing the sentence of an inmate with metastatic colon cancer). Moreover, the Policy Statement also contemplates the incapacitation of a caregiver for minor children as an extraordinary and compelling reason. Coupled with Neba's terminal illness, reducing Neba's sentence is consistent with the Sentencing Commission's § 1B1.13 Policy Statement.

If Neba is granted a sentence reduction she will live in Manvel, Texas with family friends who are temporarily looking after her children. Neba will be able to obtain medical treatment because she will qualify for government assistance based on her medical disability. Should the Court have any further questions about Neba's medical condition Neba is willing to provide complete copies of her medical records either under seal or for *in camera* review to protect her privacy rights.

## VI. Conclusion.

Neba is suffering from incurable terminal cancer and the caregiver of her seven-year-old twin boys is incapacitated. The current caregiver for Neba's children, their paternal grandmother, is unable to stay in the United States past the week of June 24, 2019. Given the quickly advancing nature of her terminal illness and the need to provide a caregiver for her minor children, the "most effective manner" of

treating Neba is for her to seek treatment outside of the BOP and to be home to raise her sons. For the foregoing reasons, Neba respectfully requests that the Court grant reduction in sentence to time served or to probation with or without a condition of home confinement.

Respectfully submitted,

s/ Zachary L. Newland
Zachary L. Newland
Senior Litigation Counsel
**Brandon Sample PLC**
P.O. Box 250
Rutland, Vermont 05702
Phone: (802) 444-4357
Fax:    (802) 779-9590
Email: zach@brandonsample.com
Texas Bar: 24088967
https://brandonsample.com

*Counsel for Marie Neba*

## CERTIFICATE OF CONFERENCE

I hereby certify that I attempted to conferr with lead counsel for the United States in this matter prior to filing this motion on June 20, 2019. However, I was unable to obtain the position of the United States prior to filing the motion with the Court.

s/ Zachary L. Newland
Zachary L. Newland

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served this 20th day of June 2019, via CM/ECF on all counsel of record.

s/ Zachary L. Newland
Zachary L. Newland
