United States District Court
Southern District Of Texas

United States of America,

             Plaintiff,

v.

Marie Neba,

             Defendant.

Case No. 4:15-cr-00591-2

## Reply To Government's Response
## To Neba's Motion For Compassionate Release

      The Federal Bureau of Prisons, Marie Neba ("Neba"), and the Government all agree that her metastatic cancer, which began in her breast before metastasizing in her spine, is a terminal illness. Apparently, that is not enough. The Government's position is that it does not matter how sick Neba is because the sentence *was* appropriate.

      The central idea motivating the power to grant compassionate release is that the importance of ensuring justice should be tempered with mercy. Neba's terminal illness qualifies as an "extraordinary and compelling" reason for compassionate release under 18 U.S.C. § 3582(c)(1)(A) and the applicable Sentencing Commission policy statement ("Policy Statement"). *See* U.S.S.G. §1B1.13, n.1(A). "Metastatic solid-tumor cancer," is a specifically listed example of qualifying medical conditions. *Id*. And Neba's reasons for seeking compassionate release extend beyond her grim prognosis. The previous caregivers for Neba's young twin sons are incapacitated or

unavailable to take care of the boys. The family circumstances only compound the extraordinary and compelling medical reasons for a sentence reduction.

Additionally, The Policy Statement is crystal clear that Neba is not precluded from seeking compassionate release just because the reasons for her motion were "known or anticipated by the sentencing court." U.S.S.G. §1B1.13, n.2. There is no reason to consider Neba's progressive metastatic cancer as ordinary and uncompelling.

The relevant question before the Court is whether the applicable 18 U.S.C. §3553 factors support a compassionate release sentence reduction today. Neba is does not pose a danger to anyone as a non-violent offender with no documented substance abuse history. The crippling effect of Neba's spreading cancer make this clearer. A sentence sufficient, but not greater than necessary today is met by reducing Neba's sentence to time served and imposing a substantial period of mandatory home confinement during supervised release.

## ARGUMENT

### I. Other caregivers are not available to care for Neba's minor children contrary to the Government's claim.

Marie Neba is the proud mother of three children. Her oldest child, Claudel Tilong is a 19-year-old college student; her youngest two are 8-year-old twin boys. As part of her motion for compassionate release, Neba asserted that "the caregiver" for the minor children was "incapacitated" and no other capable adult was available to step in. (*See* ECF No. 313 at 8-9). Neba was the primary caregiver for the children prior to her incarceration and Neba's husband is currently a fugitive. (*Id.*).

Neba asserted that the people who had been taking care of the boys were no longer able or willing to care for them. (*Id*.). [1]On August 18th, the Government filed a sealed filing with the Court responding partly to Neba's motion. (ECF No. 319).



Neither Neba nor her counsel are privy to the exact contents of this filing. What is clear, however, is that parts of the sealed filing "call[] into question the representations…made…about the unavailability of caregivers for [Neba's] children." (ECF No. 326 at 3). The Government appeared to claim that since there are distant adult relatives living that Neba cannot demonstrate "the caregiver" for the children is "incapacitat[ed]" as provided by the Policy Statement. U.S.S.G. §1B1.13, n.1(C). The Government seemingly argued that 1) there are other adult familial caregivers available, and 2) that Neba was lying in her compassionate release motion as a result. This is just not true.

Attached to this reply as **Exhibit 1** is a redacted copy of the report of Doctor Alexandria H. Doyle for the Court's consideration. (Exh. 1). Doctor Doyle is a clinical and forensic psychologist who interviewed all of Neba's children and

---

[1] Figure 1, Neba pictured with her three children during recent visitation.

performed various tests. (Exh. 1 at 1). Dr. Doyle reported that the children have been shuttled between living situations since Neba was incarcerated. After two months living with the first interim caregiver "the school raised concerns about the hygiene of the children…" (Exh. 1 at 1). The next interim caregiver was unable to watch after the children and they "went without food." (Exh. 1 at 1).

Although the boys did live with one family for 18 months, that family was unable to care for the children anymore and gave Claudel "two weeks to prepare to receive the children." The boys had to go live with their sister in a college apartment where they share a queen-size bed. (Exh. 1 at 1). According to Dr. Doyle, "there is no one in the mother's family to care for the children." (Exh. 1 at 1). Dr. Doyle reports that the family of Neba's fugitive husband are "also not suitable to care for the children." (Exh. 1 at 1). The issues with the any of the siblings of Neba's husband assuming a caregiver role are plainly spelled out in Dr. Doyle's report: one brother lives in Cameroon and does not have permanent residence in this country; another brother is handicapped; the third brother had one of his own children pass away as a result of negligence in the home. (Exh. 1 at 1).

Neba does not relish hashing out the unsuitability of distant relatives in open court. But the Government's assertion that other caregivers are available to assume care of Neba's minor children is patently false.

## II.    Neba's metastatic cancer is an extraordinary and compelling reason to grant compassionate release.

The Government argues that Neba has not shown the existence of extraordinary and compelling circumstances because: 1) Neba has not served

enough prison time, 2) Neba's cancer was not unforeseen at the time of her sentencing, and 3) granting compassionate release would give Neba a better sentencing outcome than her attorney asked for at the sentencing hearing. (ECF No. 314 at 12). The Government's three arguments are unpersuasive.

First, there is no requirement that the reasons put forward as extraordinary and compelling be previously unknown. In fact, the Sentencing Commission Policy Statement dictates the exact opposite conclusion:

> **2. Foreseeability of Extraordinary and Compelling Reasons**. For purposes of this policy statement, an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment. Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement.

U.S.S.G. § 1B1.13, n.2. It is unsurprising that the Government does not even mention this authoritative agency policy which is directly on point. The plain language of the Policy Statement shows that the Government is wrong.[2]

Second, the Government argues that Neba cannot show extraordinary and compelling reasons because she has "served a small fraction of her 900-month sentence…." (ECF No. 314 at 13). According to the Government's logic, doctors could tell Neba she has 30 days left to live tomorrow and that would not be sufficient to consider compassionate release. This is of course absurd. There is no requirement that a defendant serve a particular amount of prison time for extraordinary and

---

[2] Additionally, as discussed below, Neba's condition has significantly worsened since her sentencing and this would be independently new information to rely upon.

compelling reason analysis. Congress included just this type of requirement for inmates who seek a sentence reduction based on their elderly age. *See* 18 U.S.C. §3582(c)(1)(A)(ii) (serve at least 30 years for eligibility if over 70). The Government should not be allowed to superimpose a similar requirement into cases brought under § 3582(c)(1)(A)(i).

Third, it is entirely immaterial what length of sentence Neba argued was appropriate at the time of original sentencing. Why would the length of sentence Neba argued for at sentencing have any relation to Neba showing the existence of extraordinary and compelling circumstances for compassionate release? It does not and the Court should dismiss the Government's arguments to the contrary. The Sentencing Commission is charged by Congress with issuing policy statements on the cases where a sentence reduction may be appropriate. The Policy Statement provides examples of extraordinary and compelling medical reasons that are virtually identical to Neba's. U.S.S.G. §1B1.13, n.1(A)(i). Neba's reasons pass the statutory test.

## III.   Neba's condition is worsening and BOP is not providing proper treatment

A copy of the results from Neba's most recent PET/CT scan from August 22, 2019 is attached here as **Exhibit 2[3]** and incorporated by reference. The analysis from the scan showed "elevated activity within several," of the cancerous areas. (Exh. 2). Simply put, Neba's cancer is spreading through her spine and worsening.

---

[3] Neba is filing complete copies of Exhibit 1, Exhibit 2, and Exhibit 3 simultaneously with this motion under seal.

(*See* Exh. 2). This is despite the treatment that Neba has been previously receiving for her condition.

As shown in **Exhibit 3**, Neba's oncologist ordered a new hormone treatment therapy to begin in September. The BOP did not implement the oncologist's recommended treatment plan in September. When Neba met with the oncologist almost a month later, the doctor ordered that Neba receive hormone injections at an outside facility on October 1st, October 15th, and October 30th. (Exh. 3). Neba received the October 1st treatment. The BOP did not take Neba for the hormone therapy on the other two days as required by the oncologist's treatment plan. It is unknown if the BOP has taken Neba for any further treatments outside the prison since November 5th. Neba has complained about the timely provision of medical care on multiple occasions to no avail.

## IV. §3553 Factors call for a sentence of time served with mandatory home confinement.

### A. Nature and Circumstances of Offense and History and Characteristics of the Defendant

This factor points in favor of granting a sentence reduction. Neba's personal characteristics show that she is a first-time non-violent offender. She was by all accounts a devoted mother. Neba is suffering from a terminal illness while in prison and this factor points towards exercising discretion to reduce her sentence.

### B. Reflect seriousness of offense, promote respect for the law, and to provide just punishment.

The Court should assess the § 3553 factors today anew and not in the same light as when imposing a sentence for the first time. Neba has already been

sentenced to 900 months in prison. That certainly reflects seriousness of the offense. Reducing Neba's sentence to time served in light of her circumstances would not undermine this important sentencing goal. Further, granting compassionate release would ensure that this sentencing principle is satisfied because the punishment Neba receives *today* should be just punishment. Justice requires more than retribution.

## C. Affording adequate deterrence

As previously mentioned, the Government has already received the general deterrent effects of a 900-month sentence. Indeed, the Government acknowledges as much in their response. A message has been sent to the healthcare community writ large. Granting a sentence reduction would not undermine the general deterrence. Others are not likely to commit healthcare fraud thinking that they too could later receive relief based on developing a terminal illness. Similarly, the need for specific deterrence would be served by reducing the sentence to time served and requiring a lengthy period of home confinement. The Court has the authority to monitor Neba's interactions with other people convicted of crimes, restrict her movement through GPS monitoring, and oversee her permissible use of electronics through standard electronic monitoring software of devices. Specific deterrence would still be served.

## D. Protect public from future crimes

Unfortunately, Neba is suffering from a terminal illness that she is not likely to ever recover from. Her already limited future dangerousness is even lower under these circumstances. Neba strongly objects to the Government's assertion that she

has somehow continued to commit crimes during her incarceration. Neba has been given no notice or opportunity to respond to these allegations which are not public. Neba is an aging mother of three who simply wants to spend as much time as she can for the remainder of her life with her children.

## E. Kinds of sentences available

The Court is not required to set Neba free without conditions or keep her in prison for 900 months. The Court knows this. The Court should fashion an appropriate sentence with conditions to satisfy the Court as discussed previously. Home confinement is a prime example and its availability points in favor of compassionate release.

## F. Sentencing range available.

This factor is not applicable to compassionate release analysis and the court need not treat it as such. *See* 18 U.S.C. § 3582 (to the extent applicable). Neba's guideline range remains the same.

## G. Need to avoid unwarranted sentence disparities

Granting compassionate release would avoid unwarranted sentencing disparities among similarly situated offenders today. Neba's 900-month sentence was significantly greater than the average sentence to similarly situated defendants. Neba is not arguing the original sentence is improper. Neba simply is pointing out that this factor is neutral at worst.

### <u>Conclusion</u>

The United States has made the decision to enact procedures which allow for compassionate release. Mercy and not merely punishment are sometimes the most important function of the justice system. Neba presents exactly the type of case where compassionate release is most proper. The Court should grant Neba compassionate release.

Respectfully submitted,

s/ Zachary L. Newland
Zachary L. Newland
Senior Litigation Counsel
**Brandon Sample PLC**
P.O. Box 250
Rutland, Vermont 05702
Phone: (802) 444-4357
Fax:    (802) 779-9590
Email: zach@brandonsample.com
Texas Bar: 24088967
https://brandonsample.com

*Counsel for Marie Neba*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served this 6th day of November 2019, via CM/ECF on all counsel of record.

s/ Zachary L. Newland
Zachary L. Newland