UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | |
| | § | Criminal No. 4:15-CR-00591-2 |
| MARIE NEBA, | § | |
| Defendant. | § | |
| | § | |

**UNITED STATES' OPPOSITION TO PETITIONER MARIE NEBA'S
MOTION FOR EVIDENTIARY HEARING**

The United States of America, by and through its undersigned counsel, respectfully submits this response in opposition to Petitioner Marie Neba's request for an evidentiary hearing. An evidentiary hearing is unnecessary in this case. Dkt. 341. The multiple filings and voluminous exhibits submitted by the parties are sufficient for the Court to determine whether Ms. Neba has met her burden to demonstrate that "extraordinary and compelling reasons" warrant her release. Further, no emergency hearing is warranted as the Bureau of Prisons ("BOP") has taken key steps to protect inmates and their staff from the spread of Covid-19.

**I.      Procedural Background**

On November 5, 2015, a grand jury indicted Neba, along with her husband and two of their co-conspirators, for her role in a scheme to submit over $13 million of false and fraudulent claims to the Medicare Program. Dkt. 1. These claims were the result of illegal kickback payments and/or were for services that Neba and her husband's home health agency did not provide or that patients did not need. *Id.* At the end of her trial in November 2016, the jury found Neba guilty of all of the counts in the Indictment, and the trial court remanded her into custody immediately following trial. Dkt. 117.

At sentencing, Neba argued to the Court that it should grant her a downward departure and

1

impose a variant sentence of between 84 and 96 months imprisonment based, among other things, on her recent cancer diagnosis, her need for effective medical care from outside of the BOP, and family circumstances. Dkt. 181 at 3, 7-12. The Court imposed a sentence of 900 months imprisonment, three years of supervised release, an $800 special assessment, restitution of approximately $13.2 million to Medicare, and a money judgment in the same amount. Dkt. 159, 208.

Neba appealed her sentence. Dkt. 201. Neba argued to the Fifth Circuit that the sentencing court imposed a substantially unreasonable sentence because it failed to consider her cancer and her family situation, among other arguments. Opening Appellant Brief, *United States v. Neba*, No. 17-20520, 2017 WL 6496289, at *12 (5th Cir. December 4, 2017). The Fifth Circuit affirmed the sentence. *United States v. Neba*, 901 F.3d 260 (5th Cir. 2018). The Supreme Court denied Neba's petition for certiorari. Dkt. 310.

Before and after Neba filed her appeal, she asked the BOP for compassionate release on three occasions, arguing that she should be released because of (1) a debilitating medical condition, (2) a terminal illness, and (3) the incapacitation of a family-member caregiver. Dkt. 313-1. The BOP denied her requests on April 27, 2018, December 27, 2018, and January 22, 2019, respectively. *Id.* On June 20, 2019, Neba filed a motion for compassionate release with the Court.[1] Dkt. 313. The government filed its opposition on July 11, 2019. Dkt. 314. On November 6, 2019, Neba filed a reply in support of her motion. Dkt. 331. Per the Court's order, the government filed Neba's 2019 medical records on December 12, 2019. Dkt. 335, 336. The government was granted leave to file a surreply, Dkt. 338, 339, and per the Court's order, obtained and filed a report from

---

[1] Of course, Covid-19 was not one of the bases for her release in her pending Motion for Compassionate Release, as it was not an issue in June 2019.

2

Neba's treating oncologist, Dkt. 340, 343.  On March 18, 2020, Neba filed this motion requesting an emergency hearing on her original petition for compassionate release.  This filing is a response to that motion.

The BOP has provided a copy of another compassionate release request based on Covid-19 that Neba dated March 30, 2020.  Sealed Exhibit A.

**II.     No Evidentiary Hearing is Required.**

Although the decision to grant a hearing is squarely within the Court's discretion, *United States v. Smith*, 546 F.2d 1275, 1279 (5th Cir. 1977) (citation omitted), an evidentiary hearing is "not granted as a matter of course, but [is] held only when the defendant alleges sufficient facts, which, if proven, would justify relief," *United States v. Harrelson*, 705 F.2d 733, 737 (5th Cir. 1983) (citations omitted); *see United States v. Dean*, 100 F.3d 19, 21 (5th Cir. 1996) ("Evidentiary hearings are not granted as a matter of course; such a hearing is required only if any disputed material facts are 'necessary to the decision of the motion.'" (citations omitted)); *Smith*, 546 F.2d at 1279–80 (holding that "'[a]n evidentiary hearing is not required where none of the critical facts are in dispute and the facts as alleged by the defendant if true would not justify the relief requested'" (quoting *United States v. Poe*, 462 F.2d 195, 197 (5th Cir. 1972)).

Here, the Court has a sufficient record before it to rule on Neba's motions.  The parties have provided extensive briefing and hundreds of pages of exhibits to the Court.  The Court has liberally allowed the parties to file documentary evidence, including witness statements/reports, with the Court.  The Court has Neba's medical records from the BOP and outside providers who have treated Neba and a report from a witness filed by Neba.  The Court also sought and was provided a sealed filing addressing the government's concerns that Neba has not been rehabilitated and a statement by Neba's treating oncologist that is consistent with her medical records.  A statement from the clinical director at FMC Carswell and Neba's BOP medical records from

3

November 2019 to early April 2020 are attached as exhibits to this response as well. *See* Sealed Exhibits B and F. Simply put, the records are the records. Neither party disputes that Neba has cancer or the course of treatment she has received. No one has disputed the accuracy of the records or identified any medical information missing from them that is not otherwise laid out in the briefing. Neba has not identified additional witnesses, other than Neba herself, from whom she requires witness testimony. Any question regarding Neba's condition and her ability to obtain treatment while incarcerated is in the records that have already been provided to the Court.

Neba argues that an evidentiary hearing is necessary because her condition has worsened since her motion was initially filed. Dkt. 341 at 4. But the records filed with the Court reflect that Neba continues to receive treatment, as ordered by her oncologist and other medical professionals. She has offered no evidence that she has been denied treatment recommended by her oncologist, that her oncologist is not providing adequate care, or that her oncologist is unqualified. When directed by the Court to identify "any treatment that the physician would like to prescribe, but has not been prescribed, the reason it has not already been effectuated," Dkt. 340, Neba's oncologist did not identify any treatment that is wanting, Dkt. 343.

Further, as recently as March 17, 2020, Neba has been well enough to work out on a regular basis for at least thirty minutes, including using workout videos, weights, and treadmills or the elliptical machine. *See* Sealed Exhibit C. On March 17, 2020, Neba was captured by a prison security camera leaving the recreation/work out area. Stills from that video reflect that she was sweating and walking unassisted. *See* Exhibit D. She reserved weights for 35 minutes that day. *See* Sealed Exhibit E. Recent logs for reserving equipment also reflect that she has reserved weights and a television to play workout videos. *Id.*; *see also* Sealed Exhibit C (explaining that the television is only for workout videos).

A hearing is not necessary in this case. The Court has before it the information necessary to determine whether Neba met her burden to establish that "extraordinary and compelling reasons warrant" an over 70-year reduction in her sentence and whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Shores*, No. 19-80055-cr (S.D. Fla. Apr. 1, 2020) (rejecting to a motion for home confinement because of Covid-19 and holding that "this Court would not find that serving a little over two (2) months of an eighty (80) month sentence would justify a reduction under the facts of this case. It does not act as a deterrent; it does not promote respect for the law.") (attached as Exhibit G).

### III.    To the Extent Neba Raises a New Basis for Release Based on Covid-19, Neba Has Not Exhausted Administrative Remedies.

Neba's substantive Motion for Compassionate Release pre-dates Covid-19 and accordingly does not raise Covid-19 as a separate basis for relief. Rather, Neba references Covid-19 in the motion for a hearing as to her original Motion for Compassionate Release. Neba appears to argue that the Court should consider the recent issues related to Covid-19 when considering her petition for home confinement. Dkt. 341 at 6. This issue is not properly before the Court.

The First Step Act requires petitioner to exhaust her administrative remedies within BOP before seeking relief from a federal Court. Under the statute as amended by the First Step Act, the Court may act "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *See* 18 U.S.C. § 3582(c)(1)(A). Neba submitted a petition to the Warden, which she dated March 30,

2020. To allow the BOP to consider this new, previously unconsidered ground for relief, Neba must wait thirty days, until April 29, 2020, before seeking court intervention.

Notwithstanding the ever-changing situation related to pandemic, the First Step Act has not been amended to remove this thirty-day waiting period, nor is the government aware of any recently-provided special guidance that removes this thirty-day waiting period. The overwhelming majority of courts addressing Covid-19-related requests for release under 18 U.S.C. § 3582(C)(1)(A), including the Third Circuit and district courts in this Circuit, have required defendants to wait thirty days after the warden's receipt of a request to seek relief from a court. *United States v. Raia*, No. 20-1033, -- F.3d --, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020) (holding that where 30 days have not passed following presentation of a request to a warden, the statute "presents a glaring roadblock foreclosing compassionate release at this point"); *United States v. Lalla*, No. 5:16-cr-1448 (S.D. Tex. Apr. 6, 2020) (Dkt. 107) (attached as Exhibit H); *United States v. Clark*, No. CR 17-85-SDD-RLB, 2020 WL 1557397, at *3-5 (M.D. La. Apr. 1, 2020); *see, e.g.*, *United States v. Holden*, No. 3:13-CR-00444-BR, 2020 WL 1673440, at *10 (D. Or. Apr. 6, 2020); *United States v. Johnson*, No. CR RDB-14-0441, 2020 WL 1663360, at *6 (D. Md. Apr. 3, 2020); *United States v. Sundblad*, No. CV 6:16-CR-00047-JMC, 2020 WL 1650041, at *2 (D.S.C. Apr. 3, 2020); *United States v. Gagne*, No. 3:18-CR-242 (VLB), 2020 WL 1640152, at *4 (D. Conn. Apr. 2, 2020); *Shores*, No. 19-80055-cr (S.D. Fla. Apr. 1, 2020) (attached as Exhibit G); *United States v. Williams*, No. CR JKB-15-0646, 2020 WL 1506222, at *1 (D. Md. Mar. 30, 2020); *United States v. Zywotko*, No. 2:19-cr-113-FtM-60NPM, 2020 WL 1492900, at *1 (M.D. Fla. Mar. 27, 2020); *United States v. Eberhart*, No. 13-cr-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020); *United States v. Oliver*, No. JKB-16-0485, 2020 WL 1505899, at *1 (D. Md. Mar. 30, 2020); *United States v. Cohen*, No. 18CR602 (WHP), 2020 WL

1428778, at *1 (S.D.N.Y. Mar. 24, 2020); *United States v. Gileno*, No. 3:19-CR-161-(VAB)-1, 2020 WL 1307108, at *3 (D. Conn. Mar. 19, 2020); *United States v. Clausen*, No. CR 16-256 (MJD/LIB), 2020 WL 1442852, at *1 (D. Minn. Mar. 24, 2020); *United States v. Monzon*, No. 99CR157 (DLC), 2020 WL 550220, at *2 (S.D.N.Y. Feb. 4, 2020); *cf. United States v. Anderson*, No. 19-10963 (5th Cir. Mar. 19, 2020 and Mar. 23, 2020) (orders denying prisoners' motions for bail pending appeal that rested on Covid-19 concerns) (attached as Exhibit I). *But see United States v. Perez*, No. 17 CR. 513-3 (AT), 2020 WL 1546422, at *1 (S.D.N.Y. Apr. 1, 2020) (noting that petitioner had *three weeks* remaining in his sentence); *United States v. Zukerman*, No. 16 CR. 194 (AT), 2020 WL 1659880, at *2 (S.D.N.Y. Apr. 3, 2020). The Fifth Circuit previously has held for other claims brought under the First Step Act that failure to exhaust "the multi-step BOP" procedure is jurisdictional. *Falcetta v. United States*, 734 F. App'x 286, 287 (5th Cir. Aug. 9, 2018) (per curiam) (a 28 U.S.C. § 2241 motion asserting that the defendant should have received credit for time served on a state sentence); *United States v. Garcia*, 606 F.3d 209, 212 n.5 (5th Cir. 2010) (seeking a sentencing reduction under Section 3582(c)(2) based retroactive guideline amendment).

To the extent the argument for compassionate release related to Covid-19 is raised for the first time in her motion for an evidentiary hearing, this Court should wait for Neba to exhaust her administrative remedies, giving the BOP a chance to consider any petition, before addressing any new grounds for relief related to Covid-19.

### IV. Conditions of Neba's Detention Nevertheless Adequately Safeguard Neba's Health Such that an Emergency Hearing is Not Required.

In addition to her claim for compassionate release based on Covid-19 not yet being ripe, as the statute requires, this Court should also not consider it as a reason to hold an otherwise unnecessary hearing on an emergency basis. In addition to providing care to Neba in-house and

7

through outside medical facilities, *see, e.g.*, Dkt. 314 at 14-15; Dkt. 338 at 1-6; Dkt. 343, the BOP has taken aggressive steps to limit the risk of Covid-19 transmission into, and inside of, prisons across the country utilizing the guidance and directives from the World Health Organization ("WHO"), the Centers for Disease Control ("CDC"), the Office of Personnel Management ("OPM"), the Department of Justice, and the Office of the Vice President. *See* "BOP's COVID-19 Response," *A BOP COVID-19 Overview*, *available at* https://www.bop.gov/coronavirus/overview.jsp#bop_covid-19_response. "[M]aintaining safety and security of BOP institutions is [its] highest priority." Federal Bureau of Prisons, Updates to BOP COVID-19 Action Plan: Inmate Movement (March 19, 2020), *available at* https://www.bop.gov/resources/news/20200319_covid19_update.jsp. Starting in January 2020, the BOP implemented its Pandemic Influenza contingency plan, modified as an Action Plan for Covid-19. "COVID-19 Action Plan: Phase Five," *available at* https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp. BOP has taken numerous steps to limit the possibility of the disease entering a facility and prevent spread among the inmate population, including the following measures:

- Social visits, such as visits from friends, family, and tours, have been suspended.
- Staff will receive enhanced health screening in areas that the CDC classifies as having sustained community transmission and at medical referral centers. FMC Carswell is a medical referral center.
- Legal visits have been suspended for thirty days, at which time the suspension will be reevaluated, with exceptions made a case-by-case basis. Any approved attorney will be screened for infection in accordance with the screening protocols for prison staff before admittance.

- Volunteer visits have been suspended absent authorization by the Deputy Director of the BOP. Any volunteer who obtains such authorization will be screened using the same procedures as applied to staff prior to entry.

- The BOP is coordinating with the United States Marshals Service to significantly decrease incoming movement, and any new inmates will receive enhanced screening. Any newly-arriving BOP inmates will be screened for exposure risk factors and symptoms. Asymptomatic inmates with exposure risk factors will be quarantined. Symptomatic inmates with exposure risk factors will be isolated and tested for Covid-19 consistent with local health authority protocols.

- Inmates in every institution will be secured in their assigned cells/quarters beginning April 1, 2020 for a 14-day period, at which time the modification will be reevaluated.

  - Internal inmate movement has been suspended with limited exceptions in light of federal and state criminal cases and to prevent overcrowding. There are additional precautions in place for any inmate who is authorized for movement. Inmates cannot be moved until they have been in the BOP's custody for 14 days and have undergone screening for the symptoms of the virus. Prisoners with temperatures over 100.4 degrees will not leave the facility and instead immediately be placed in isolation.

  - Access for non-essential contractors is suspended, and essential contractors (such as for medical services, mental health services, religious services, and critical infrastructure repairs) must undergo advanced health screening, which requires that the contractors undergo the same procedures as staff prior to entry.

- Official staff travel and training, other than relocation travel and basic training for new staff, is suspended, including any conferences and meetings. Any exceptions must be approved by the Deputy Director of the BOP.

- Facilities were directed to assess their stockpiles of food, medicines, and sanitation supplies and to establish quarantine areas within their facilities to house any detainees who are found to be infected with or at heightened risk of being infected with coronavirus pursuant to the above-described screening protocol; and

- Wardens have been directed to implement modified operations to maximize social distancing.

"BOP Implementing Modified Operations," *available at* https://www.bop.gov/coronavirus/covid19_status.jsp; "COVID-19 Action Plan: Phase Five," *available at* https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp.

Taken together, these measures are designed to sharply mitigate the risks of Covid-19 transmission in any BOP institution. The BOP's professionals will continue to monitor this situation and adjust its practices as necessary to maintain the safety of prison staff and inmates while also fulfilling its mandate of incarcerating all persons sentenced or detained based on judicial orders.

Although FMC Carswell has had two inmates recently test positive for Covid-19, that too does not justify holding an emergency hearing as those inmates—both recent admissions to FMC Carswell—have been isolated so that they pose no risk to the other inmates at FMC Carswell. The first positive test was housed in quarantine and isolation the entire time she was at FMC Carswell. This inmate currently is in the community hospital and not physically located at the institution. The second inmate was quarantined with the first positive case during her recent transfer to FMC

Carswell.  She has been housed in quarantine and isolation the entire time she has been at FMC Carswell, including being housed in isolation since her positive test result.  Neither of the Covid-19 positive inmates have been housed with Neba.  No staff members have tested positive.

Neba continues to receive medical care while the virus is present.  FMC Carswell has the capacity to address the medical needs of inmates, including Neba, during this time.  It is a federal medical center that is designed to house inmates with special medical needs.  It employs a clinical director, who is a medical doctor, and medical staff and has emergency medical care available 24 hours a day.  *See* Sealed Exhibit B (a signed statement from the clinical director).  Dr. Ganesa and her medical staff are providing Neba medical care within the facility, and Neba's BOP medical records from November 2019 to early April 2020 reflect Neba's ongoing care.  *See* Sealed Exhibit F.

### V.        Conclusion

For the foregoing reasons, an evidentiary hearing is not necessary for the Court to rule on Neba's motion.

Date: April 13, 2020                                              Respectfully submitted,

                                                                  RYAN K. PATRICK
                                                                  United States Attorney

                                                                  /s/ Catherine Wagner
                                                                  Catherine Wagner
                                                                  Trial Attorney
                                                                  United States Department of Justice
                                                                  Fraud Section, Criminal Division
                                                                  1000 Louisiana Street, Suite 2300
                                                                  Houston, Texas 77002
                                                                  Catherine.Wagner@usdoj.gov
                                                                  (713) 567-9515

## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2020, a true and correct copy of the foregoing filing was filed via the Court's Electronic Case File system and the sealed exhibits also were provided to Marie Neba's counsel and the Court via email.

/s/ Catherine Wagner
Catherine Wagner
Trial Attorney